MCGREGOR W. SCOTT
United States Attorney
BRIAN W. ENOS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00305 LJO |
|---|---|
| Plaintiff, | **THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT** |
| v. | |
| BLAKE ANDREW RYAN, | |
| Defendant. | Date: November 26, 2018<br>Time: 8:15 a.m.<br>Judge: Hon. Lawrence J. O'Neill |

## I.   INTRODUCTION

On December 21, 2017, the grand jury returned a three-count indictment against defendant Blake Andrew Ryan ("defendant"), charging him with three counts of receipt and distribution of child pornography, each in violation of 18 U.S.C. § 2252(a)(2) (Counts One through Three).  Doc. 1.  On July 9, 2018, defendant pleaded guilty in open court to Count One, following the parties' filing a Rule 11(c) plea agreement on June 20, 2018.  Docs. 18 and 21.  At the change of plea hearing, the court scheduled the sentencing hearing to take place on October 22, 2018.  Doc. 21.  On August 3, 2018, the court issued a minute order continuing the sentencing hearing to November 26, 2018.  Doc. 24.

United States Probation issued a draft Presentence Investigation Report ("PSR") on October 17, 2018, and filed its final PSR on November 5, 2018.  Docs. 28 and 29.  U.S. Probation's application of the sentencing guidelines mirrors the parties' agreed applicable guidelines as set forth in the plea agreement.  Docs. 18 and 29.  Both the parties and U.S. Probation likewise agree that the appropriate

term of supervised release for defendant after his release from custody is 120 months. Doc. 18, ¶ 3(i); Doc. 29, p. 23.

## II.     APPLICABLE GUIDELINES CALCULATIONS

Within the parties' plea agreement and U.S. Probation's PSR, defendant's agreed adjusted sentencing guidelines level is 37. Doc. 18, ¶¶ 3(g)-(h), 4(a)-(b); Doc. 29, ¶¶ 36-46. As set forth in detail within the plea agreement, PSR and Section 2G2.2 of the Sentencing Guidelines (2016), these agreed guidelines include the following components:

1. A *base offense level* of twenty-two (**22**) for receiving and distributing child pornography (§ 2G2.2(a)(2));

2. *Plus* the following sentencing enhancements:

    a. two (**2**) levels pursuant to defendant's receipt and distribution of sexually explicit images of prepubescent minors and/or children under twelve (12) years of age (§2G2.2(b)(2));

    b. five (**5**) levels pursuant to defendant's distribution of sexually explicit images for valuable consideration (§2G2.2(b)(3)(B));

    c. four (**4**) levels for receiving and distributing sexually explicit images of minors that involve the portrayal of sadistic, masochistic or other depictions of violence (§2G2.2(b)(4));

    d. two (**2**) levels because the offense involved the use of a computer (§ 2G2.2(b)(6)); and;

    e. five (**5**) levels because the offense involved more than 600 images. (§ 2G2.2(b)(7)(D).

3. *Minus*:

    a. Three (**3**) levels pursuant to defendant's acceptance of responsibility (§ 3E1.1 – Plea Agreement, para. 4(b)), for an adjusted universally agreed applicable sentencing level of thirty-seven (**37**).

Doc. 18, ¶¶ 3(g) and (h), 4(a) and (b); Doc. 29. ¶¶ 36-46.

In light of defendant's past criminal convictions, his applicable Criminal History Category is level III. Doc. 29, p. 22. While an adjusted guidelines calculation of 37 and Criminal History Category III would normally result in an applicable sentencing range of 262-327 months, in this case the statutory

maximum sentence pursuant to defendant's conviction is 240 months.  18 U.S.C. § 2252(b)(1).  Accordingly, defendant's sentencing range is likewise 240 months.[1]  USSG § 5G1.1(a).

### III.     THE GUIDELINES AND § 3553(A) FACTORS SUGGEST THE PARAMETERS OF A REASONABLE SENTENCE

Whereas the Sentencing Guidelines were once "mandatory", they must now be consulted in an "advisory" capacity in that a sentencing court now must also consider factors outlined at 18 U.S.C. § 3553(a).   Those factors include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) To afford adequate deterrence to criminal conduct;

    (C) To protect the public from further crimes of the defendant; and

    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for

    (A) The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines issued by the Sentencing Commission…

(5) Any pertinent policy statement -

    (A) Issued by the Sentencing Commission . . .

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

Here, consideration of the factors identified within 18 U.S.C. § 3553(a) supports an imprisonment term consistent with defendant's applicable guideline term of 240 months.  From a macro

---

[1] The government is likewise aware of its obligation at sentencing to stand by the terms to which the parties agreed in a signed plea agreement.  See United States v. Alcala Sanchez, 666 F.3d 571, 575-577 (9th Cir. 2012).

perspective, subsections (3) and (4) provide that a court "shall consider . . . the kinds of sentences available" and "the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant, as set forth in the guidelines." Subsection (5) requires a court to consider "any pertinent policy statement ... issued by the Sentencing Commission."

Regarding this case, perhaps the most important factors to the court's analysis in determining a reasonable sentence for defendant are subsections (2) and (6) of 18 U.S.C. § 3553(a). Subsection (2) requires the court to consider the need to "reflect the seriousness of the offense", "afford adequate deterrence" and "protect the public." In the case of child exploitation prosecutions, the government has a compelling interest to protect children from those who would exploit them. As justification for the imposition of significant sentences in child exploitation offenses, the Supreme Court has held "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982). Here, defendant's aggressive practice of not just collecting but distributing child pornography so he in turn could collect additional child pornography is among the most egregious of conduct underlying receipt and distribution convictions.

Subsection (6) addresses the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This makes sense, because imposing a sentence on defendant that is heavier than this court has imposed on those who the government could prove committed similar conduct is unfair to defendant, and a sentence imposed on this defendant that conversely is lighter than other similarly situated defendants is unfair them.

In this case, defendant's conduct warrants a sentence of 240 months. In aggravation, defendant was on felony probation when he committed the instant offense. In addition and as noted in the PSR (pp. 23-24), nothing in defendant's past explains why he began collecting and ultimately distributing child pornography. Perhaps most disturbing, defendant would likewise boast about sexually abusing a pre-pubescent boy within online chat sessions. Id. In short, no facts exist to justify a variance downward from a sentence of 240 months.

///

///

## IV. RESTITUTION

"[T]he court shall order restitution" pursuant to convictions of crimes including those committed in violation of 18 U.S.C. § 2252(a).  18 U.S.C. § 2259(a).  "The order of restitution … shall direct the defendant to pay the victim … the full amount of the victim's losses as determined by the court."  18 U.S.C. § 2259(b)(1).  The issuance of a restitution order under Section 2259 is indeed mandatory.  18 U.S.C. § 2259(b)(4)(A).

The term "full amount of the victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F)  any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A) through (F).

Federal courts may order restitution to the extent authorized by statute.  United States v. Kennedy, 643 F.3d 1251, 1260 (9th Cir. 2011) (citing United States v. Gossi, 608 F.3d 574, 577 (9th Cir. 2010)).  Section 2259 is the statutory mechanism that allows for a restitution order regarding this action's known victim who made a restitution claim, and regarding those losses and other harms caused by the offense of conviction.  Paroline v. United States, 134 S.Ct. 1710, 1720 (2014).   The burden is on the government to establish, by a preponderance of the evidence, the existence of a causal connection between the victim's losses and the defendant's conduct in order to meet the requirements of § 2259.  Kennedy, 643 F.3d at 1262.  If it is impossible to trace a particular amount of a victim's claimed losses to an individual defendant, then sentencing court applying § 2259 should order a restitution amount comporting with defendant's relative role in the causal process that underlay the victim's general losses.  Paroline, 134 S.Ct. at 1715.

In addition, in United States v. Galan, 804 F.3d 1287 (9th Cir. 2015), the court held that a person who participates in the distribution, receipt or possession of child pornography cannot be required to pay restitution for losses caused by the original abuser's actions; instead, the losses must be disaggregated.

Id. at 1290-91; See also United States v. Grovo, 826 F.3d 1207, 1222 (9th Cir. 2016). The Galan court provided examples of factors that may affect the apportionment, or disaggregation, in a particular case: "egregiousness of the original abuse; how a victim can (or does) cope with that kinds of abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected." Galan, 804 F.3d at 1291. The court further noted that "precision is neither expected nor required" in apportioning the losses, and that "the ultimate question will be a mix of 'discretion and estimation.'" Id. (quoting Paroline v. United States, 134 S.Ct. 1710, 1729 (2014)).

Prior to the filing of the instant sentencing memorandum, the government notified U.S. Probation of its receiving the following restitution requests from known victims in this case, and on the following dates:[2]

(1) On May 18, 2018, the government received a detailed presentation, including cover letter and supporting documents, from counsel for the "Pia", "Ava" and "Mya" victims within the "Sweet Sugar" child pornography series, in which they *each* seek $5,000 in restitution from defendant. The government notes that the National Center for Missing & Exploited Children ("NCMEC") reports that 21 images of each of these victims were identified within defendant's child pornography collection;

(2) On May 18, 2018, the government received a separate detailed presentation, including cover letter and supporting documents, from counsel for the "Maureen" victim within the "Lighthouse" child pornography series, in which "Maureen" seeks $10,000 in restitution from defendant. The government notes that NCMEC reports that 2 images of this victim were identified within defendant's child pornography collection;

(3) On September 29, 2018, the government received a separate detailed presentation, including cover letter and supporting documents, from counsel for the "Andy" victim within the "SpongeB" child pornography series, in which "Andy" seeks $25,000 in restitution from defendant. The government notes that NCMEC reports that 2 images of this victim were identified within defendant's child pornography collection;

(4) On November 6, 2018, the government received a separate detailed presentation, including cover letter and supporting documents, from counsel for the "Jenny" child pornography victim, in which "Jenny" seeks no less than $3,000 in restitution from defendant. The government notes that NCMEC reports that 4 images of this victim were identified within defendant's child pornography collection; and

(5) On November 6, 2018, the government received a separate detailed presentation, including cover letter and supporting documents, from counsel for the "Casseaopeia" victim within the "Lighthouse" child pornography series, in which "Casseaopeia" seeks

---

[2] The government understands that U.S. Probation likewise possesses each of these requests and supporting documentation.

no less than $3,000 in restitution from defendant. The government notes that NCMEC reports that 2 images of this victim were identified within defendant's child pornography collection.

In light of the above requests, the government asks the court to award each above-identified reporting victim the restitution awards they seek. The government is likewise aware of this court's prior restitution awards issued in other child pornography cases. If the court is not inclined to order restitution to the above victims at or near the requested amounts, the government asks the court to issue restitution awards consistent with those issued in prior cases involving similar conduct and similarly-situated victims.

If the court determines that it needs additional information prior to ruling on any of the above restitution requests, then the government asks that a restitution hearing be set within 90 days of the sentencing hearing, without affecting any other component of the court's sentence and judgment, as authorized by 18 U.S.C. § 3664(d)(5).

## V.     SPECIAL ASSESSMENT

Within the plea agreement, the parties agreed that the penalty assessment defendant faces pursuant to his conviction in this case is $5,100. Doc. 18, at 9:1-2. There are two statutory components to this assessment, namely: (1) $100, since this defendant is an individual and he pleaded guilty to a felony count (18 U.S.C. § 3013(a)(2)(A)); and (2) $5,000, since the count to which defendant pleaded guilty was located within Chapter 110 of Title 18 of the United States Code (18 U.S.C. § 3014(a)(3)).

The government asks the court order defendant to separately pay each of the above penalty assessments, since they involve separate time-periods through which they must be paid. Specifically, the $100 assessment must be paid within "five years after the date of the judgment." 18 U.S.C. § 3013(c). Defendant's obligation to pay the $5,000 assessment issued through the Justice for Victims of Trafficking Act, however, "shall not cease until the assessment is paid in full." 18 U.S.C. § 3014(g).

## VI.     CONCLUSION

Based on the evidence underlying the plea agreement and PSR, as well as the information provided in support of each known victims' restitution requests, the government respectfully requests that the Court sentence defendant to a guideline incarceration term of 240 months imprisonment,

followed by a 120-month term of supervise release.  The government further requests the court to order restitution as required pursuant to 18 U.S.C. § 2259 and in the above-requested amounts.

Dated:  November 14, 2018                                  McGREGOR W. SCOTT
                                                           United States Attorney


                                                    By:   /s/ Brian W. Enos
                                                           Brian W. Enos
                                                           Assistant United States Attorney